UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X
DANNY DOMINGUEZ,                                              Case No.: 22-4603

                Plaintiff,                                              COMPLAINT

-against-                                                     Jury Trial Demanded

163 OCEAN TENANTS CORP., MERIDIAN PROPERTIES, LLC,
ANN MARIE BARKER, and MICHAEL NIAMONITAKIS,

                Defendants,
------------------------------------------------------------------------------------X

      Plaintiff Danny Dominguez ("Danny"), by his attorneys, Smith, Buss & Jacobs LLP, for his Complaint against defendants 163 Ocean Tenants Corp. (the "Co-op"), Meridian Properties LLC, ("Meridian"), Ann Marie Barker ("Barker"), and Michael Niamonitakis ("Niamonitakis"; collectively "Defendants"), allege as follows:

## SUMMARY OF THE ACTION

      1.      For a period of approximately fifteen months, Danny worked as the superintendent of the cooperative building located at 163 Ocean Avenue, Brooklyn, New York 11225 (the "Building"). During this period, the Co-op, Meridian, Barker and Niamonitakis, all of whom employed Danny, had a practice of failing to pay Danny the overtime wages pay he earned, as well as the spread-of-hour pay he was entitled to, in violation of the Fair Labor Standards Act, as amended, 29 U.S.C §§ 201 *et. seq.* ("FLSA") and New York Labor Law ("NYLL"). In addition, Defendants failed to provide Danny with lawful wage statements, failed to provide Danny with a hire notice, and failed to pay Danny weekly in violation of NYLL. As such, Defendants are liable to Plaintiff in an amount not less than $250,000 including liquidated damages, attorneys' fees, pre-

judgment and post-judgment interest, and disbursement and costs, all of which Danny is entitled to under the FLSA and NYLL.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C § 1367.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4. Danny is an individual who resides in Nassau County, New York, who was Defendants' non-exempt employee from approximately August 28, 2020 through October 28, 2021.

5. Upon information and belief, the Co-op is a corporation organized under the laws of the State of New York, with offices located at c/o Meridian Properties, LLC, 8214 Third Avenue, Brooklyn, New York 11209, who was Danny's employer within the meaning of the FLSA and NYLL.

6. Upon information and belief, Meridian is a limited liability company organized under the laws of the State of New York, with offices located at 8214 Third Avenue, Brooklyn, New York 11209, who was the Co-op's managing agent during the term of Danny's employment and Danny's joint employer within the meaning of the FLSA and NYLL.

7. Among other things, Meridian had the power to hire, discipline and fire Building workers and did so; had input as to the compensation Building workers were paid including Danny; supervised Building workers including Danny by directing their work activities, setting work

schedules including overtime hours; and maintained the worker/employee records including their personnel files and payroll records.

8. The Co-op and Meridian employed employees at their places of business in the activities of an enterprise engaged in commerce, including employees handling, selling or otherwise working on goods or materials that have been moved or produced for commerce. Their enterprises have an annual gross volume of sales made or business done in an amount not less than $500,000.

9. Barker is an individual employed by Meridian who upon information and belief, resides in and worked in Kings County, New York, who was Danny's joint employer within the meaning of the FLSA and NYLL.

10. During the term of Danny's employment by Defendants, Barker was the Building's property manager and Danny's primary supervisor, who directed Danny's work activities on a day-to-day basis.

11. Among other things, Barker had the power to hire, discipline and fire Building workers and did so; had input as to the compensation Building workers were paid including Danny; supervised Building workers including Danny by directing their work activities, setting work schedules including overtime hours; and maintained the worker/employee records including their personnel files and payroll records.

12. Upon information and belief, at all relevant times, defendant Niamonitakis is an individual residing in Kings County, New York, who is the sponsor of the Co-op and Danny's joint employer within the meaning of the FLSA and NYLL.

13. Among other things, Niamonitakis had the power to hire, discipline and fire Building workers and threatened to terminate Danny's employment on at least one occasion;

determine the compensation Building workers were paid including Danny; and supervised Building workers including Danny by directing their work activities, setting work schedules including overtime hours; and maintained worker/employee records.

FIRST CLAIM FOR RELIEF
FLSA – UNPAID OVERTIME

14. Danny repeats and realleges each and every allegation of the proceeding paragraphs hereof with the same force and effect as though fully set forth herein.

15. As the Building's superintendent, Danny's responsibilities and projects on the job included repairing radiator valve leaks; addressing boiler problems; demolishing a large cinder block wall that covered an oil tank at the direction of Niamonitakis; tearing apart a 5,000 gallon oil tank as instructed by Niamonitakis; cleaning the lobby, mailbox, basement and building front areas virtually every day; blowing the leaves out of the courtyard; stop gapping leaks; installing railings on the left and right side of the building; power washing portions of the Building; clearing out sewer lines to alleviate leaks; painting various parts of the building including the entire basement; installing key boxes for fob keys; investigating the location of holes in apartments through which mice had entered; replacing bathroom traps in apartments; caulking bathtubs; replacing boiler room sub pumps; manually cleaning out sewer pits of raw sewage to gain access to pumps as demanded by Barker; fixing water pumps; fixing leaks in apartment bathrooms and kitchens; installing air conditioners in apartments; replacing faucets and bathtub knobs in apartments; repairing portions of the ceiling through which water leaked into the building; addressing plumbing issues for which a plumbing vendor was not needed; posting signs in the building as needed; cleaning the trash room chute; installing roof screens; plastering parts of the building where needed; repairing and replacing light fixtures in the Building and apartments; replacing door latches; scraping radiators so they could be painted; cleaning storage rooms;

replacing shelving in the package room; moving and removing cable wires as needed; replacing electrical sockets in apartments; replacing cabinet hinges in apartments; replacing fire extinguishers; cleaning the boiler room; cleaning the bicycle room; cleaning exterior sidewalks; cleaning sewage that had leaked to the building exterior; reseeding the Co-op grounds as needed; installing toilet seats, smoke detectors and carbon monoxide detectors in apartments; repairing door knobs and locks on apartments; removing graffiti from the Co-op grounds; shutting down water in apartments when a leak was occurring; cleaning up dog feces from the co-op grounds; cutting the locks off storage containers when instructed; addressing fob key issues raised by shareholders; adjusting the heat and the water temperature in the building to address complaints by shareholders/tenants; addressing smoke alarm incidents; addressing gas leaks in apartments; unclogging faucets and bathtubs in apartments; placing or removing plants in the Building; shutting down the elevator and boiler when necessary, such as in the case of a flood; and welding metal to the Co-op gate.

16. During the term of Danny's employment by Defendants, Danny worked an average of not less than 27.5 overtime hours per week including extensive work in the evenings and on weekends.

17. During these overtime hours, Danny did a wide variety of work, including but not limited, to replacing radiator valves; tending to ongoing boiler/radiator problems; walking the Building for security reasons (sometimes at 1, 2 or 3 a.m.); making emergency repairs; stop gapping floods and leaks; cleaning up after floods and leaks; and tending to water bug and mice issues.

18. Of particular note was Danny's work on weekday and weekend evenings preparing apartments for showings as instructed by Barker.

19. In each instance, Danny was required to lug heavy furniture kept in the basement of the building to the apartment to set up for the showing and then return the furniture to the basement storage area afterwards.

20. In addition, among other things, Danny was responsible for cleaning the apartments for the showings and moving plants to and from them as instructed by Barker.

21. On numerous occasions, Barker contacted Danny on Saturday morning (without any prior notice) and required Danny to assist her for one or more showing including on one occasion when he had already left the Building for a fishing trip.

22. Another example of Danny's regular overtime work was a period of approximately two weeks during which Barker required Danny to surveil occupants of Apt. 20 for hours at a time in the evening to determine if they were squatters and instructed Danny to offer any squatters he identified $10,000 to give up the subject apartment. On yet another occasion, Barker ordered Danny to set up a lemonade stand in the lobby for an evening party she was putting on.

23. Defendants failed to pay Danny any overtime wages for the overtime hours he worked.

24. Defendants' failure to pay Danny the overtime compensation he was entitled to caused him to suffer loss of wages and interest thereon.

25. Defendants willfully and in bad faith, violated Danny's rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours each week in violation of the FLSA and regulations promulgated thereunder.

26. Danny is entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and the costs and disbursements of this action pursuant to the FLSA.

SECOND CLAIM FOR RELIEF
NYLL – UNPAID OVERTIME

27. Danny repeats and realleges each and every allegation of the proceeding paragraphs hereof with the same force and effect as though fully set forth herein.

28. As set forth above, during the term of Danny's employment by Defendants, Danny worked an average of not less than 27.5 overtime hours per week including extensive work in the evenings and on weekends.

29. Defendants failed to pay Danny any overtime wages for the overtime hours he worked

30. Defendants' failure to pay Danny the overtime compensation he was entitled to caused him to suffer loss of wages and interest thereon.

31. Defendants willfully and in bad faith, violated Danny's rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours each week in violation of NYLL and regulations promulgated thereunder.

32. Danny is entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and the costs and disbursements of this action pursuant to NYLL.

### THIRD CLAIM FOR RELIEF
### NEW YORK LABOR LAW – HIRING NOTICE

33. Danny repeats and realleges each and every allegation of the proceeding paragraphs hereof with the same force and effect as though fully set forth herein.

34. NYLL and related regulations require that at the time of hiring employers shall notify employees in writing, in their primary language of, among other things, their regular hourly rate of pay, overtime rate of pay, the regular pay day designated by the employer and the name of the employer.

35. During Danny's term of employment by Defendants, they failed to provide such notification to Danny and their failure to do so was willful and in bad faith.

36. Danny is entitled to recover from Defendants $50 for each day this violation continued, up to a maximum of $5,000.

### FOURTH CLAIM FOR RELIEF
### NEW YORK LABOR LAW – PAYSTUB NON-COMPLIANCE

37. Danny repeats and realleges each and every allegation of the proceeding paragraphs hereof with the same force and effect as though fully set forth herein.

38. NYLL requires employers to furnish each employee a statement with every payment of wages that includes, among other things, the dates of work covered by the payment, hourly rate(s) of pay, overtime rate(s) of pay, number of regular hours worked, the number of overtime hours worked and the employer's address and phone number.

39. During Danny's term of employment by Defendants, Defendants failed to provide such statements to Danny and their failure to do so was willful and in bad faith.

40. Danny is entitled to recover $250 for each day this violation continued, up to a maximum of $5,000.

## FIFTH CLAIM FOR RELIEF
### NEW YORK LABOR LAW – SPREAD-OF-HOURS PAY

41. Danny repeats and realleges each and every allegation of the proceeding paragraphs hereof with the same force and effect as though fully set forth herein.

42. NYLL requires employers to pay an extra hour's pay for each day that an employee works an interval in excess of 10 hours.

43. Defendants failed to pay Danny an extra hour's pay for every day that Danny worked an interval in excess of 10 hours.

44. Defendants' failure to pay such spread-of-hours pay to Danny was willful and in bad faith.

## SIXTH CLAIM FOR RELIEF
### NEW YORK LABOR LAW – PAY FEQUENCY

45. Danny repeats and realleges each and every allegation of the proceeding paragraphs hereof with the same force and effect as though fully set forth herein.

46. NYLL requires employers to pay "manual workers" weekly and "not later than seven calendar days after the end of the week in which the wages were earned."

47. Danny is a "manual worker" within the meaning of NYLL § 190(4).

48. Defendants failed to pay Danny weekly.

49. Danny is entitled to recover liquidated damages from Defendants due to their failure to pay Danny on a weekly basis in violation of NYLL.

50. Defendants' failure to pay Danny weekly was willful and in bad faith.

WHERETOFORE, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and against Defendants providing the following relief:

9

      (a)    Issuance of a declaratory judgment that the practices complained of in this complaint were unlawful;

      (b)    An order requiring the payment of all monies owed by Defendants to Plaintiff under the FLSA and NYLL including all unpaid wages, overtime pay, spread-of-hours pay, daily penalties set forth herein, liquidated damages, attorneys' fees, pre-judgment interest, post judgment interest, and the costs and disbursements of this action in the total amount of not less than $250,000; and

      (c)    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: Yonkers, New York
      August 4, 2022

                                        SMITH, BUSS & JACOBS, LLP

                        By:    /s/ *John J. Malley*
                                John J. Malley, Esq.
                                733 Yonkers Avenue, Suite 200
                                Yonkers, New York 10704
                                Tel: (914) 476-0600
                                *Attorneys for Plaintiff*